## WOMACK *et al.*, *vs.* WHITE *et al.*

1. E. D., a feme covert, who was entitled to a life-estate in certain negroes, the remainder to her children at her death, filed a bill against the trustee for account of hire and profits, and for his removal and the appointment of a new trustee, in which a decree was rendered. Four years afterwards, in the Court in which the decree was rendered, on the motion of the solicitors for E. D., in that proceeding, passed an order to amend that decree, so far as to direct the sheriff to sell one of the trust negroes for payment of fees for services in that suit. Upon suit brought by the children of E. D., after her death, against one holding under a sale made in pursuance of that order: *Held*, That such order so passed was void as against the plaintiffs, they not being parties to the same, having no notice thereof, and not represented either on the hearing when the order was passed, or the original bill to which it was amendatory.

2. That a copy of the advertisement taken from the paper in which the sale was advertised, sworn to be such by the sheriff, who sold under that order, was admissible as evidence.

2. That the purchaser at such sale got no title thereby as against these plaintiffs, and those holding under them are in no better situation, whether they bought with or without notice.

Trover, in Sumter Superior Court. Tried before Judge PERKINS, at April Term, 1860.

The children of Elizabeth Dinkins sued Joseph White and John S. Moore to recover a negro boy named Levi. On the trial, the plaintiffs introduced a deed from William P. Brown, the father of Mrs. Dinkins, dated May 8th, 1827, conveying seven negroes and their increase to one Mark M. Brown, to be held by him in trust for the separate use of Mrs. Dinkins during her life, and after her death, to be divided amongst her children.

The plaintiffs further proved that the negro sued for was a child of one of the negroes mentioned in said trust deed; that Mrs. Dinkins died in 1852, leaving them as her only children, and that demand had been made on the defendants for the negro in dispute, they having him in possession.

They also proved that Horace Dinkins, husband of said Elizabeth, was appointed her trustee in lieu of the said Mark M. Brown, in 1844. They then proved the value of the negro, and his worth for hire, and rested their case.

Defendants introduced in evidence the record of a bill filed in February, 1839, in favor of Horace Dinkins, as next friend of his said wife, against the said Mark M. Brown, her trustee under said deed, alleging his mismanagement of said trust property and his refusal to account with Mrs. Dinkins for the hire of the same, and praying that he be removed from his trusteeship, and that he account, etc.    Also, the de-cree rendered on said bill, in which the jury found that the said Mark M. Brown had fully accounted, but decreed by consent of said Brown that he should be removed from said trusteeship, and that Thomas Bivins be appointed in his place. This decree was rendered in March, 1840.

Defendants then proposed to read in evidence an order granted by the Superior Court of Sumter county, at the May Term, 1844, amending the decree rendered on said bill so as to authorize and require the sheriff to sell a negro boy, Levi, mentioned in said decree, after advertising sixty days, for the purpose of paying E. R. Brown and Warren and Crawford, the solicitors of complainant in said bill, the fees which said complainant had agreed to pay them for filing and attending to the same.

The plaintiffs objected to this evidence, on the ground that the Court granting said order had no jurisdiction, and that the same was a nullity.

The objection was overruled, and the order was read.

The defendant then proved by Green M. Wheeler, that the negro boy Levi was sold at sheriff's sale on the 1st Tuesday in February, 1845, and bid off by Lot Warren at about $300 00.   Wheeler also stated that Dinkins and his wife lived in 1839 in a poor house, and not as well provided for as persons owning a life-estate in fourteen negroes ought to have been.

A bill of sale from Lott Warren to Dudley & Sneed for the negro in dispute was then read, dated March 19, 1845, with warranty.

Hugh M. D. King proved that James White bought the negro Levi from Dudley & Sneed in the year 1845, and that defendants were the heirs of said White, Joseph White being his executor.   He heard Joseph White say he had run off the negro in 1853 to get him out of the difficulty.

Wright Brady testified, that Mrs. Dinkins was poorly provided for in 1839; that she and her husband and children

removed from Sumter to Marion county in 1839, or early in 1840, and none of them resided in Sumter county in any part of the year 1844.

John J. Hudson stated that he was the foreman of the jury which rendered the decree in 1840. It was a consent decree. Brown was not present, nor the plaintiffs, nor any guardian of theirs, nor were Mr. and Mrs. Dinkins present.

Here the defendants rested their case.

Plaintiff introduced one Miller, who testified, that he heard Joseph White say, after this suit was brought, (Thomas Bivins and Horace Dinkins being present,) that when the negro was sold to them, the understanding was, that he was to be carried out of the county, as the title was not good.

Horace Dinkins testified, that he had no notice or information about the sale of the boy Levi until the evening before the sale; that he attended the sale and forbade its taking place, but the sheriff paid no regard to him; that when the bill was filed against Mark M. Brown, Warren & Crawford and E. R. Brown agreed with witness and wife to attend to said case for $200 00 each, taking their joint notes for the same. After the decree in 1840, E. R. Brown came in witness' absence and got the negro Levi from witness' wife. A few days thereafter, witness saw Brown, and it was then agreed between them that Brown was to hire out said negro until said fee notes were paid. Brown kept the negro from thence up to the sale in 1844; he, witness, had hired the negro previously at $60 00 a year; he got the mother of Levi soon after his marriage in 1820, but did not consider her his until 1826; he knew of the deed of trust; was present when it was executed, and paid Judge Tracy for drawing it; he filed the bill for his wife voluntarily, and now, in open Court, disclaims all title to said negro Levi.

Plaintiffs also proved by said Dinkins and Patrick Brady that Dinkins lived as well in 1839 as other people in his circumstances.

Green M. Wheeler testified, that he kept a file of the newspaper in which the sale of the negro was advertised, but the same has been destroyed; that before its destruction, A. J. Warmock, one of the plaintiffs, copied said advertisement in witness' presence from said newspaper, witness reading out, and Warmock writing off the same; a copy advertisement

Womack *et al.*, *vs.* White *et al.*

was here shown to witness, being the one prepared as stated, and witness said it was a true copy.

Plaintiffs then proposed to read said copy advertisement in evidence. Objection being made, the Court rejected it, and plaintiffs excepted.

Plaintiffs' counsel then stated that they were surprised, and asked the Court to continue the case to enable them to procure a copy of the newspaper containing the advertisement.

The Court refused to continue the case; and the evidence having closed, the jury returned a verdict for defendants.

Before the jury retired, the Court charged as follows:

That if it was proved that the Superior Court of Sumter county, in 1844, passed an order for the sale of the negro in dispute, and that said negro was afterwards sold by the sheriff, in pursuance of said order, the purchaser got a good title against the plaintiffs. You will not look behind the order to see whether the same was regular or not. If the order of sale was passed by the Court, everything will be presumed in favor of its regularity, so far as the purchaser of the negro under the order is concerned.

And further: If there had been irregularities in procuring the order of sale in May, 1844, in such case, although Warren and James White may both have had notice thereof, yet if Sneed, the intermediate purchaser, bought without notice thereof, then defendants can protect themselves under said want of notice in Sneed, in the same manner as if defendants had been innocent purchasers, without notice.

To which charges plaintiffs' counsel excepted, and which, together with the rulings of the Court already mentioned, are now assigned as error.

B. HILL; W. A. HAWKINS, for plaintiffs in error.

H. K. McCAY, *contra*.

*By the Court.*—LYON, J., delivering the opinion.

The first question made in the record is, as to the admission of the order, from the minutes of the Superior Court of Sumter county for the sale of the negro in controversy, as evidence against the objection of the plaintiff.

This order was passed and allowed by the Court at May Term, 1844, as an amendment to a decree that had been rendered in an equity cause that had been pending in that Court between Elizabeth Dinkins, by her next friend, Horace Dinkins and Mark M. Brown, a former trustee for the trust property secured to the separate use of Mrs. Dinkins for life, with remainder to her children, calling on him to account to her for the profits of said trust, and asking the Court for the appointment of a new trustee, and his removal; but which equity cause had been tried and a decree rendered at the March Term, 1840. The negro boy Lev, or Levi, was one of the trust negroes, and was embraced in the original bill and decree.

To that bill the children of Mrs. Dinkins, and the plaintiffs in the present action, and who were entitled to the negroes under the deed from William P. Brown, after the death of their mother, Mrs. Dinkins, were no parties, either directly or indirectly. They were not represented in that suit.

Upon these facts, we are clear that the order of the Court passed four years after the original cause had been disposed of, on the *ex parte* motion of the solicitors for the complainant in the bill did not affect or bind these plaintiffs, who were no parties to the original proceedings or amendatory order, and had no notice whatever of it. As to these plaintiffs, such order was absolutely null and void. A party, to be bound by a judgment, must be a party to such judgment—must have notice of the proceeding, so that he can be heard, else the judgment does not affect him or his interest. For these reasons, the Court ought to have excluded the order as evidence.

2. The copy advertisement, as testified to by Wheeler, the sheriff, who sold the negro under the same, was competent evidence, and ought not to have been excluded. Wheeler testified that it was a copy of the advertisement taken from the paper in which the property was advertised for sale in his presence, and a copy of the advertisement under which the negro was sold. What higher evidence would the newspaper containing the advertisement have afforded than this? It was but a copy itself. What higher evidence would the original writing which the sheriff sent to the printer have been than this? That was but the act of Wheeler. So is this, and sworn to.

It follows, from what I have already said, that the Court erred in his charge as to the effect of the order of the Court at May Term, 1844.

3. The purchaser, at the sale, by the sheriff, under the order of May Term, 1844, got no title whatever by that sale and purchase, as against these plaintiffs, and for the reasons I have already given; and that is, that the order of sale was null and void as to them, and the purchasers under the purchasers at such sale got no better title to the negro by such purchase than the first purchasers had, whether they bought with notice or without; and so the Court ought to have instructed the jury.

Judgment reversed.